## In re Contracting of State Debt by Loan.

1. Constitutional Law—State Debt by Loan.
The state is empowered, by section 3, article 11, of the constitution, to
    contract a debt by loan to provide for the payment of the expenses
    incurred to suppress insurrections without limitation as to amount.
2. Same—Casual Deficiencies—Section 3, Article 11, Construed.
The state may contract a debt by loan for casual deficiencies of its rev-
    enue.   In such case such debt, when evidenced by bonds, is con-
    tracted when the bonds are executed and delivered.   The power to
    contract such a debt is subject to two limitations: First, the amount
    of such debt contracted in any one year shall not exceed one fourth
    of a mill on each dollar of valuation of taxable property; and, sec-
    ond, after such valuation exceeds one hundred millions of dollars,
    the aggregate amount of the debt contracted by loan to provide for
    casual deficiencies shall not exceed $100,000.
3. Same.
The term "year," in section 3, article 11, of the constitution, means the
    "fiscal year," which commences on the first day of December of
    each year.
4. Same.
Under existing circumstances, the state may, during the current fiscal

year, contract a debt by loan to provide for casual deficiencies of its revenue in the sum of $50,000, and in the like amount during any subsequent fiscal year.

The opinion of the court is in response to the following communication from the governor:

" Whereas : The tenth general assembly passed an act providing for the funding of certain indebtedness of the state, which act was approved April 8th, 1895, and appears in the session laws of the state of Colorado for 1895, on pages 178–182 of said session laws. And,

" Whereas: The total valuation of the taxable property within the state of Colorado, as shown by the assessment for 1894, was $209,970,000. And,

" Whereas : Under the provisions of article 11, section 3, of the constitution of the state of Colorado, doubts have arisen as to the power of the state to issue the whole amount of the said casualty deficiency bonds mentioned in said act, at the present time, and the officers of the state are in doubt as to their duty in the premises. And,

" Whereas : It is by me considered that the questions raised by and involved in the foregoing premises are important and the occasion solemn.

" Now, therefore, I, Albert W. McIntire, governor of the state of Colorado, do hereby require the opinion of the honorable supreme court upon the following interrogatories, that is to say :

" *First :* Is it lawful for the state of Colorado, under the law hereinbefore cited, to issue the bonds of the state in the sum of $100,000 for the payment of the casualty deficiencies of the revenue mentioned therein, and in the further sum of $75,000 for the payment of the expenses of suppressing insurrection as mentioned therein ?

" *Second :* If it be unlawful for the state to issue $100,000 for the payment of said casual deficiencies at the present time, what amount can be issued and what amount not exceeding $100,000 as a total, if any, can be issued after the end of the present fiscal year?

" *Third:* Is the form of the bond and is the form of the coupon thereto attached, herewith submitted, in compliance with the statute and the constitution?·

" *Fourth:* Is there anything in the said act or the title thereof in contravention of the constitution of this state, or any provision thereof?

" (Signed)                 ALBERT W. MCINTIRE,
                    " Governor of the State of Colorado."


That part of section 3 of article 11 of the constitution referred to in the foregoing preamble, and material to this inquiry, is as follows:

" The state shall not contract any debt by loan in any form except to provide for casual deficiencies of revenue, * * * suppress insurrection, * * * and the amount of the debt contracted in any one year to provide for deficiencies of revenue shall not exceed one fourth of a mill on each dollar of valuation of taxable property within the state, and the aggregate amount of such debt shall not at any time exceed three fourths of a mill on each dollar of said valuation until the valuation shall equal one hundred millions of dollars, and thereafter such debt shall not exceed one hundred thousand dollars, * * * and in all cases the valuation in this section mentioned shall be that of the assessment last preceding the creation of said debt."


The questions propounded by the foregoing communication were discussed by BYRON L. CARR, Attorney General, Mr. WILLIAM B. FELKER and Mr. DANIEL E. PARKS, *amici curiæ.*


PER CURIAM.   This section gives to the state the power to contract a debt by loan to provide for the payment of expenses incurred to suppress insurrection, subject to no limitation as to the amount.   By the same section the state may contract a debt by loan to provide for casual deficiencies of its revenue.   But in such case such debt, when evidenced

or represented by bonds, as provided in this act, is contracted when the bonds are duly executed and delivered, and the power to contract such a debt, under existing circumstances, is subject to two limitations : *First*, the amount of such debt contracted in any one year shall not exceed one fourth of a mill on each dollar of valuation of taxable property within the state ; *second*, after such valuation exceeds one hundred millions of dollars, the aggregate amount of such debt—that is, the debt contracted by loan to provide for casual deficiencies of the revenue—shall not exceed one hundred thousand dollars.

The term "*year*" in section 3 means "*fiscal year*," and in this state the fiscal year shall be deemed to commence on the 1st day of December and end on the 30th day of November in each year. Our general assembly meets biennially, and at each session legislates with respect to the raising and disbursing of revenue for the two fiscal years next ensuing.

We are advised by the governor that by the assessment of 1894 the total valuation of taxable property in the state was $209,970,000, and upon the oral argument it was conceded by counsel who appeared in favor of the validity of the act, as well as by counsel who took the contrary view, that the valuation of taxable property in the state for the year 1895 is slightly in excess of $200,000,000. It is unnecessary to determine whether the valuation of taxable property upon which the amount of the debt is computed shall be of the assessment of 1894 or 1895, for, in either case, the provisions of this act may be made to harmonize with the limitations found in this section of the constitution, both as to the amount of the debt to be contracted in any one year and the aggregate amount of such debt.

Our conclusion, therefore, is that the state—having, by section 3 of article 11 of the constitution, the power to contract a debt by loan to provide for casual deficiencies of the revenue, which debt, under the present circumstances, may aggregate, but not exceed, $100,000, but being limited in the amount of the debt to be contracted in any one year to

one fourth of a mill on each dollar of valuation of taxable property—may, during the present fiscal year, upon the basis either of the assessment of 1894 or 1895, lawfully issue its bonds under this act to provide for a casual deficiency in its revenues in the sum of $50,000, and during any subsequent fiscal year in an additional sum of $50,000. The amount of the debt to be contracted by loan to pay for the expenses to suppress insurrection being subject to no limitations as to the amount thereof, the state may also issue its bonds for such purpose in the sum of $75,000 at any time and in accordance with the provisions of the act.

In the argument no other provisions of the constitution were called to our attention which this act or its title was supposed to contravene, nor in our investigations have we discovered any constitutional objection thereto:

As to the form of the bond and coupon submitted to us, we decline to express an opinion, as the question is not of a nature calling for our decision in the present proceeding. Such matters of detail as the form of the bonds to be issued under this act may be safely intrusted to the governor and attorney general, who, by section 7 of the act under consideration, are authorized to prescribe the form of the bonds, subject to the provisions of section 2 of the same act.