Eastern Kentucky Lunatic Asylum, &c. v. W. O. Bradley, &c.

---

CASE 81—PETITION ORDINARY—JUNE 22.

# Eastern Kentucky Lunatic Asylum, &c. v. W. O. Bradley, &c.

|     |     |
| --- | --- |
| 101 | 551 |
| f131 | 171 |

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. STATE DEBTS—POWER OF GENERAL ASSEMBLY TO MEET DEFICITS—CONSTITUTIONAL CONSTRUCTION.—The limitation in section 49, of the Constitution, which authorizes the General Assembly to contract debts and meet casual deficits or failures in the revenue, that such debts "shall not at any time exceed $500,000," is a limitation upon the power of the General Assembly to provide for future casual deficits or failures of the revenue, and has no reference to debts theretofore created for that or other purposes.

GEORGE S. SHANKLIN FOR APPELLANT.

1. The State Auditor had, prior to the adoption of the present Constitution, under acts of the General Assembly, issued warrants to the various charitable institutions of the State and the same were not paid because of a failure in the revenue. Section 49, of the Constitution was adopted to govern just such cases.
2. The provisions of section 49, of the Constitution contemplated future deficits or failures in the revenues, and has no reference whatever to deficits existing at the time of the adoption of that instrument.

W. S. TAYLOR FOR APPELLEE.

(No brief in the record.)

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

By an act of the general assembly, which became a law upon the 10th day of May, 1897, entitled "An act authorizing the Commonwealth of Kentucky to issue bonds to the aggregate amount of $500,000, for the purpose of funding certain indebtedness of the State," coupon bonds were directed to be issued by the commissioners of the sinking fund of Kentucky, and to be sold for account of the Commonwealth to the highest and best bidder or bidders, the proceeds of the sale to be used only in the payment of that part of the existing indebtedness of the Commonwealth which had been created on account of the several charitable institutions and asylums, among others the appellant corporation. Appellant filed its petition in the Franklin Circuit Court, alleging the authority given by the act to issue such bonds; that it was the holder of warrants issued by the auditor for quarterly allowances, and for the building fund provided by law, aggregating $142,365, and that the total of all warrants outstanding on account of the charitable institutions at the time of the passage of the act was over $563,000. The petition admits that, at the time of the adoption of the present Constitution and at the time of the passage of the act under consideration, the outstanding bonded indebtedness of the Commonwealth amounted to more than $500,000, and still existed at the filing of the petition, but alleges that no bonded indebtedness has been created since the adoption of the present Constitution, and that the present Constitution authorized the issuance of bonds to the amount of $500,000, in addition to the bonded

indebtedness existent at the time of its adoption. A refusal by the appellees to issue and sell the bonds provided for is pleaded, and a mandamus prayed for requiring their issue and sale. A demurrer to the petition was sustained by the trial court, and from that judgment this appeal has been prosecuted.

Sections 49 and 50 of the present Constitution contain the constitutional limitations upon the power of the general assembly to contract debts and authorize them to be contracted on behalf of the Commonwealth. They are as follows :

"Section 49. The general assembly may contract debts to meet casual deficits or failures in the revenue; but such debts, direct or contingent, singly or in the aggregate, shall not at any time exceed $500,000, and the moneys arising from loans creating such debts shall be applied only to the purpose or purposes for which they were obtained, or to repay such debts: Provided, The general assembly may contract debts to repel invasion, suppress insurrection, or if hostilities are threatened, provide for the public defense.

"Section 50. No act of the general assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purposes mentioned in section 49, unless provision be made therein to levy and collect an annual tax sufficient to pay the interest stipulated and to discharge the debt within thirty years; nor shall such act take effect until it shall have been submitted to the people at a general election, and shall have received a majority of all the votes cast for and against it: Provided, The general assembly may contract debts by borrowing money

to pay any part of the debt of the State, without submission to the people, and without making provision in the act authorizing the same for a tax to discharge the debt so contracted, or the interest thereon."

These two sections of the Constitution appear to make provision for the creation of three classes of indebtedness:

1st. To meet casual deficits or failures in the revenue, provided for by section 49.

2d. New indebtedness, which must be submited to a vote of the people, and for the payment of which, with interest, within thirty years an annual tax must be provided in the act authorizing the creation of the debt, as required in the body of section 50.

3d. For the purpose of funding a debt existing at the adoption of the Constitution, or thereafter created in accordance with its provisions, which is authorized by the proviso of section 50.

The two classes last mentioned are not necessary to be, and are not, passed upon in this case.

The act under consideration appears to have been drawn and adopted under section 49, and the question for decision here is whether it is authorized by that section of the organic law. The limitation contained in the section, providing that such debts "shall not at any time exceed $500,-000," seems to us clearly to be a limitation upon the power of the general assembly to provide for future casual deficits or failures of revenue, and to have no reference to debts theretofore created for that or other purposes. We must assume that the framers of the Constitution were

aware of the outstanding indebtedness of the Common-
wealth, and adopted the provision in question with refer-
ence to the condition then existing; and we can not believe
that by this permissive provision, which expressly author-
izes the creation of indebtedness to meet casual deficits
or failures in the revenue, it was intended to include in the
deficits provided for deficits already existent and greater
in amount than the authorized indebtedness would pro-
vide for. Such a construction would render the authority
useless. The language used appears to indicate that the
entire section was intended to apply to future deficits. It
provides that the general assembly may contract debts;
that such debts shall not exceed $500,000, and that the
money arising from such loans shall be applied only to the
purpose or purposes for which they were obtained, or to
repay such debts. There is no indication in the language
of the section that any acts theretofore performed, or any
debts theretofore created, were referred to or provided for.
It will, moreover, be observed that the class of indebtedness
provided for by section 49 is expressly excepted from the
provisions of section 50 by the terms of that section.

Under the averments of the petition it appears that no
debt has, since the adoption of the present Constitution,
been created by the general assembly for the purpose of
meeting casual deficits or failures in revenue. This is the
first exercise of authority under section 49; and as the
existence of a deficit sufficient in amount to warrant the
exhaustion by the general assembly of the power conferred
by the Constitution has been averred, we see no good

reason for denying to the general assembly the right in this act to proceed to the limit of its constitutional power.

For the reasons stated the judgment is reversed and the case remanded, with directions· to set aside the judgment sustaining the demurrer, and for further proceedings consistent with this opinion.