## State Budget Commission et al. v. Lebus et al.

(Decided June 24, 1932.)

702

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE and S. H. BROWN, Assistant Attorneys General, for appellants.

PETER LEE, TABB, KRIEGER & HEYBURN; CARY TABB; and M. CARLISLE MINOR for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON.—
Affirming.

When the General Assembly convened on the first
Tuesday in January, 1932, there were in existence audi-
tor's warrants, indorsed by the state treasurer as in-
terest bearing, aggregating more than $13,000,000. By
Senate Bill No. 454, adopted by the General Assembly at
its 1932 session, and approved by the Governor, these
warrants were recognized as debts of the commonwealth,
and their payment was provided for by the issuance and
sale of bonds by the State Budget Commission, to the
amount of $14,000,000.

A suit was filed in the Franklin circuit court, by cer-
tain taxpayers against the members of the State Budget
Commission, wherein it was alleged that the Senate Bill
violated sections 49 and 50 of the State Constitution, and
was void. The circuit court entered a judgment declar-
ing the act void. The State Budget Commission appeals.

It is insisted by the taxpayers that warrants drawn
by the auditor under section 143, Ky. Stats., against legal
appropriations, indorsed by the state treasurer as pro-
vided by section 4688a-2, Ky. Statutes, are not "debts"
within the meaning of sections 49 and 50 of the Constitu-
tion. The State Budget Commission contends they con-
stitute debts within the meaning of these sections, and
that the General Assembly was within its constitutional
rights when it adopted Senate Bill 454, authorizing the
issuance and sale of bonds without submitting the ques-
tion of their issuance and sale to the people at a general
election.

The vital questions presented by this appeal are not
ones of first impression with this court. However, we
shall so consider and dispose of them. To consider and
dispose of them we are required to do so in the light of
sections 49 and 50 of the Constitution. It is essential to
view sections 49 and 50 in connection with other related
sections and also certain sections of the statutes enacted
in pursuance thereof.

Section 49 reads:

"The general assembly may contract debts to
meet casual deficits or failures in the revenue; but
such debts, direct or contingent, singly or in the
aggregate, shall not at any time exceed five hundred
thousand dollars ($500,000.00), and the moneys aris-

ing from loans creating such debts shall be applied only to the purpose or purposes for which they were obtained, or to repay such debts: Provided, The general assembly may contract debts to repel invasion, suppress insurrection, or, if hostilities are threatened, provide for the public defense.''

Section 50 is in this language:

"No act of the general assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purposes mentioned in sec. 49, unless provision be made therein to levy and collect an annual tax sufficient to pay the interest stipulated, and to discharge the debt within thirty years; nor shall such act take effect until it shall have been submitted to the people at a general election, and shall have received a majority of all the votes cast for and against it: Provided, The general assembly may contract debts by borrowing money to pay any part of the debt of the state, without submission to the people, and without making provision in the act authorizing the same for a tax to discharge the debt so contracted, or the interest thereon.''

Section 171 provides, in part:

"The general assembly shall provide by law an annual tax, which with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. . . .''

Section 230 declares:

"No money shall be drawn from the state treasury, except in pursuance of appropriations made by law.''

Section 88 confers on the Governor power to disapprove "any part or parts of appropriation bills embracing distinct items, and the part or parts disapproved shall not become a law unless reconsidered and passed, as in case of a bill.'' Fergus v. Russ. 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120.

Section 53 imposes upon the General Assembly the duty to provide by law for monthly investigations into the accounts of the treasurer of the state, and the auditor

of public accounts, with directions that the results of the investigations be reported to the Governor and by him

"transmitted . . . to the general assembly [at the beginning of each session] for scrutiny and appropriate action."

Section 143, Ky. Stats., reads:

"A warrant of the auditor upon the treasury shall state upon its face the date, amount, and the name of the person to whom payable, and on what account, and out of what fund to be paid; and shall not be issued unless the money to pay the same has been appropriated by law; and he may require any claimant to state on the face of his claim the law under which it is payable."

Section 4688a-2, Ky. Stats., reads:

"Whenever any warrant hereafter issued by the auditor of public accounts shall be presented to the treasurer for redemption, and the funds appropriated for the purpose for which said warrant was issued are exhausted, the treasurer shall endorse thereon the date of its presentation with the words, 'No funds with which to pay this warrant, and it bears five per cent (5%) interest from this date until called in,' with his official signature thereto, and such warrant shall thereafter bear interest at the rate of five per cent (5%) per annum, payable semi-annually."

With these constitutional and statutory provisions in mind, we shall consider the questions presented in connection with the validity of the warrants in existence at the time of the adoption of Senate Bill No. 454.

The purpose of section 53 was to provide the General Assembly and the Governor with statistical facts when considering acts providing for appropriations, carrying provisions for the levy, and collection of taxes with which to meet them.

If the General Assembly in the exercise of its constitutional powers overestimates the revenues, when making appropriations and providing for the levy and collection of taxes for their payment, and the Governor by inadvertence, or otherwise, permits such appropriations to pass his power of veto, and the apropriations

exceed the levy and collection of taxes provided for their payment, and thereby an actual deficit results, the Legislature may constitutionally at any succeeding session provide, by its enactment, for an additional or supplemental levy and collection of taxes with which to meet such appropriations. If this were not so, the Constitution would be impotent and the Legislature prevented from functioning for governmental purposes. It is well understood that the aggregate of the general appropriations of each Legislature not infrequently in this, as in other states, greatly exceeds the amount of cash in the hands of the state treasurer when such appropriations are made. Therefore, when making appropriations the Legislature constitutionally may consider the taxes levied and in the process of collection, as in the state treasury, though not actually paid into the treasury, and its overestimate of the revenue will not nullify the appropriations. It is a general rule recognized in every jurisdiction that state funds so in sight, but not actually on hand, may be anticipated and appropriated, as though actually in the hands of the state treasurer, and if the appropriations as made by general law, and if the levy and collection of the general taxes intended to be provided for the payment of the appropriations are insufficient to meet them and thereby "casual deficits" result, later assessments, levies, and collections by general law may be provided for by the Legislature to meet them. In re State Warrants, 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852 State v. McCauley, 15 Cal. 430; People ex rel. McCauley v. Brooks, 16 Cal. 28; State v. Medbery, 7 Ohio St. 5297 People ex rel. apron v. Nelson, 344 Ill. 46, 176 N. E. 59; Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L. R. A. (N. S.) 989.

If the Legislature without proper statistical information, or for any other reason, overestimates the revenue on hand or incoming, and fails to make provision for sufficient funds to carry out the appropriations, and the auditor issues warrants against them, and the same are receipted and indorsed by the state treasurer as authorized by the statutes supra, such warrants, notwithstanding the revenue proves inadequate to pay them, are valid assignments of such appropriations, or orders on the treasury, and may be denominated valid evidence "of casual deficits," within the meaning of sections 49 and 50.

If the issuance of the warrant by the auditor against an appropriation and its receipt and indorsement by the

treasurer created a "debt" within the meaning of sections 49 and 50, which when added to such other similar warrants exceed $500,000, the limitation of the indebtedness fixed by these sections, mean that the state must pay cash, or have on hand in the treasury funds with which to meet them, else when the aggregate exceeded $500,000, the excess would be void in virtue of sections 49 and 50, such construction would prevent the operation of the state government by rendering impossible a compliance with the State Constitution, for it must always be presumed that some time will elapse between the issuance of warrants and their payment, during which time the auditor's warrants under *such a definition* of the word "debts" would unavoidably exceed the constitutional limit. The Constitution does not so require the state to operate on a cash or "pay-as-you-go" plan.

It should be observed that the terms "casual deficits" or "failures in the revenue" used section 49 are made a part of section 50, by its reference to section 49. Section 49 authorizes the General Assembly to "contract debts" to meet "casual deficits or failures in the revenue" *when* such "casual deficits" or "failures in the revenue," contingent, singly, or in the aggregate, *are less than $500,000.* Then, and then only, the Legislature may (1) contract "debts" for the payment of such "casual deficits" without the submission of the question to the people at a general election; but, if the "casual deficits" or the "failures in the revenue" exceed $500,-000, then in that event the Legislature must provide (a) either for the payment thereof in the manner and way authorized by section 171, or (b) section 50.

The whole theory of the Constitution, when the Legislature engages in "contracting a debt or debts" for the purpose of meeting "casual deficits" or "failures in the revenue" in excess of $500,000, is that the Legislature is entirely subservient to and must comply with these two sections. In the exercise of the power conferred by section 171, the Legislature is sovereign and controlled solely by its own discretion (Barrow v. Bradley, Mayor, 190 Ky. 480, 227 S. W. 1016); but if it attempts to exercise the power conferred by the other two sections and the "casual deficits" exceed $500,000, it must do so subject to the limitations of these sections, and refer the question to the people as therein provided.

It may "contract debts" only to the extent and in the manner provided by and within their limits. State ex rel. City of Richmond v. Davidson, 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067,. 58 L. R. A. 739; In re Heinemann's Will, 201 Wis. 484, 230 N. W. 698; State ex rel. Vandyke v. Cary, 181 Wis. 564, 191 N. W. 546; People ex rel. Nelson v. Board of Supervisors of King's County, 52 N. Y. 556; In re Contracting of State Debt by Loan, 21 Colo. 399, 41 P. 1110; State v. Donald, 160 Wis. 21, 151 N. W. 331; State v. Stewart, 58 Mont. 1, 190 P. 129; State v. Lister, 91 Wash. 9, 156 P. 858; State v. State Board of Examiners, 74 Mont. 1, 238 P. 316; Hovey v. Foster, 118 Ind. 502, 21 N. E. 39; In re Appropriations by General Assembly, 13 Colo. 316, 22 P. 464; McKenna v. Bates, 19 R. I. 610, 36 A. 1133; People v. Johnson, 6 Cal. 499; Nougues v. Douglass, 7 Cal. 65; Stanley v. Townsend, 170 Ky. 833, 186 S. W. 941, 943; Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855; Williams v. Louisiana, 103 U. S. 637, 36 L. Ed. 595.

In Eastern Ky. Lunatic Asylum v. Bradley, 101 Ky. 551, 41 S. W. 556, 557, 19 Ky. Law Rep. 750, this court classified state debts under sections 49 and 50 as follows:

"These two sections of the constitution appear to make provision for the creation of three classes of indebtedness:

"(1) To meet casual deficits or failures in the revenue, provided for by section 49.

"(2) New indebtedness, which must be submitted to a vote of the people, and for the payment of which, with interest, within 30 years, an annual tax must be provided in the act authorizing the creation of the debt, as required in the body of section 50.

"(3) For the purpose of funding a debt existing at the adoption of the constitution, or thereafter created in accordance with its provisions, which is authorized by the proviso of section 50."

The Bradley Case considered "debts" embraced in class 3. In Stanley v. Townsend, the court dealt with "debts" included in class 1. In the latter case inadvertently it was stated:

"A debt which the General Assembly may contract under the proviso to section 50, without a submission of the question to the voters of the state includes only the indebtedness of the state in existence

at the time of the adoption of the Constitution, and has no reference to debts incurred subsequent to that time.''

The type and character of debt referred to in this excerpt was not presented in that case. Under the classification made by this court in the Bradley case, it is conceivable that where bonds are issued and sold in virtue of section 50 of the Constitution, and for any reason the funds levied and collected for the purpose of discharging such bonds should be diverted, or fail, it would be competent for the Legislature, under the classification in the Bradley case, to issue and substitute new bonds for the old, or sell the new ones with which to obtain funds to pay the old bonds, without again submitting the question to the people, as well as to contract for the payment of debts existing at the time of the adoption of the Constitution. The excerpt from the Stanley v. Townsend case may be regarded as obiter dictum, in so far as it tends to hold that only an indebtedness of the state in existence at the time of the adoption of the Constitution may be cared for by an issuance and sale of bonds, without a submission to the people. Class 1 recognized in the Bradley case, and the one before the court in the Stanley case, is the class involved in the present one.

In considering and treating this class, it is essential to observe that sections 49 and 50 restrict the Legislature when contracting debts to meet ''casual deficits'' or ''failure in the revenue'' but neither of these sections is a limitation on the authority of the Legislature to provide by general law for the levy and collection of taxes under section 171 of the Constitution for the purpose of meeting appropriations. Its authority to make such appropriations and to levy and collect taxes for the purpose of meeting their payment is conferred by section 171, without limitation or restriction of its discretion or power when so doing. Its will when exercising its power thereunder is supreme.

The term ''casual deficits'' and the words ''failures in the revenue,'' as they are used in sections 49 and 50, are synonymous, or the latter may be considered as explanatory of the first.

The words ''debt'' or ''debts,'' as used in these two sections, are restricted to the meaning conveyed by their use in connection with the entire language of the sections.

"Debt" or "debts" as used therein mean an obligation entered into in strict accordance with the provisions of these sections, binding the commonwealth to pay it by the levy and collection of general taxes under section 171. State ex rel. Board of University & School Lands v. McMillan, State Treasurer, 12 N. D. 280, 96 N. W. 310; Graham v. Childers, 114 Okl. 38, 241 P. 178. A contingent liability is not within the meaning of the Constitution fixing *debt* limit. Fort Dodge, etc., v. Fort Dodge, 115 Iowa, 568, 89 N. W. 7, and cases cited. Nor are "casual deficits" debts within such limit. "Casual deficits," as the term is used in these sections, means "a deficit" or "deficits," happening by chance or accident, and without any design to avoid the constitutional inhibitions against incurring an unauthorized expenditure of the state's funds above a certain amount. In re Appropriations by General Assembly, 13 Colo. 316, 22 P. 464.

The General Assembly by constitutional enactments from time to time made the appropriations by general law against which the $13,074,276.54 of auditor's warrants were drawn, of definite amounts, for certain designated state purposes, and authorized, by like enactments, the levy and collection of taxes intended to meet such appropriations. The auditor of the state by reason of section 143 Ky. Stats., was vested with a constitutional and statutory authority to draw the warrants. They were drawn by him against appropriations duly and regularly made as required by section 230. The treasurer had constitutional and statutory right to receipt and indorse same by virtue of section 4688a-2, Ky. Stats.

We desire to emphasize in plain and unmistakable words that the warrants here involved are orders on the treasury of the state, and are both valid and collectible, to be paid by the treasurer out of the state's funds on presentation by the owners, whenever sufficient funds are in the treasury for that purpose.

It cannot be assumed, however, that the owners of the warrants at the time they surrendered their respective claims against the commonwealth and accepted, in lieu of them, the warrants, that they anticipated they would be coerced to retain them indefinitely because of the failure or refusal of the Legislature, year after year, to provide funds for their payment. It cannot be doubted that such nonaction of the Legislature is in a sense a degree of repudiation.

There is no doubt that it is an inexorable duty of the Legislature to provide under section 171 for the levy and collection of taxes for the payment of the aggregate amount of the warrants or such portion thereof annually, as it may deem prudent and proper under section 171, or to "contract debts" for that purpose, in the manner and way set out in section 50, as it is herein construed and interpreted.

It may not be an impertinence to use the language of a member of the constitutional convention of 1849, when discussing the then proposed sections of the Constitution, now sections 49 and 50.

Mr. Gholson said:

"I am as much opposed to repudiation as any man, and with the whole taxing power left as it will be, to the legislature, no apprehension need be entertained of such a misfortune. My object in wishing to restrain the legislature is to prevent repudiation; for if they go on running the state into debt as they please, the people might refuse to submit to it, and declare that repudiation was preferable to inordinate taxation. And if annual deficits should occur, the governor has power to convene the legislature at any time; and they possess the power of taxing the people to raise the money to meet such deficits. There is no necessity therefore for this provision granting the power to borrow $500,000.00."

This construction and interpretation of sections 49 and 50 were given to them by the members of the constitutional convention of 1849; acquiesced in by every branch of the state government and all officers and agents of the state, and the people, from 1850 to 1891, when the constitutional convention of 1891, without debate, again adopted them without change of "dot or tittle." The same construction and interpretation were unanimously and continuously accepted until 1916 (Acts 1916, c. 50), when the Legislature attempted, by its enactment, to authorize the issuance of certificates for the purpose for which the bonds involved here are intended.

This court, in Stanley v. Townsend, supra, in which the act of 1916 was declared unconstitutional, in Billeter & Wiley v. State Highway Commission, supra, and in other cases in which these sections were collaterally in-

volved, approved our present construction and interpretation of sections 49 and 50.

Without considering the genesis of these sections and similar sections in the Constitutions of other states, or the constitutional debates, or the contemporaneous and subsequent, continuous construction thereof, or the former opinions of this court, or resorting to the universally recognized technical rules of construction of such instruments, but only considering the plain and simple words of the sections, and their clear and explicit meaning as therein used, this court does not hesitate to say that Senate Bill No. 454 violates the provisions of section 50 of the Constitution and is therefore unconstitutional.

The State Budget Commission argues that the auditor's warrants now in existence are no more than "evidences of a floating debt," and that the issuance of bonds in accordance with Senate Bill No. 454 is no more than changing the evidence of the same indebtedness, and therefore their issuance and sale are permissible under sections 49 and 50.

A "floating debt" means strictly "loans for which no permanent provision was required to be made, which have been obtained for temporary purposes, with the intention of paying them off within a brief period." Encyclopedia Brittanica; People v. Carpenter, 31 App. Div. 603, 52 N. Y. S. 781.

There can be no "floating debt" under the Constitution of Kentucky. Neither the Legislature nor the officers or agents of the state, or all combined, can create a debt by the borrowing of money or the issuing and selling bonds or incur liability to any extent, for and on behalf of the state, except in the manner provided in sections 49 and 50. The power to contract debts for and on behalf of the state is beyond the control of the Legislature, except by the means and in the manner provided in these sections. Stanley v. Townsend, supra; Billeter & Wiley v. State Highway Commission, supra; McKenna v. Bates, supra; People v. Johnson, 6 Cal. 499; Williams v. Louisiana, supra.

Another argument of the commission is that this case should be determined by the construction of like sections of the Oklahoma Constitution, as they were construed by the Supreme Court in Re Application of State to Issue Bonds to Fund Indebtedness, 33 Okl. 797, 127

P. 1065; Re Menefee, 22 Okl. 365, 97 P. 1014; and State ex rel. Board of Education of Oklahoma City v. West, 29 Okl. 503, 118 P. 146. The Oklahoma construction was followed by the Supreme Court of Montana in State v. State Board of Examiners, 74 Mont. 1, 238 P. 316. In the later case of Graham v. Childer, 114 Okl. 38, 241 P. 178, the Supreme Court of Oklahoma, itself, put an entirely different construction on the same sections of their Constitution.

We have examined the Constitutions of Oklahoma and Montana, and observe that the constitutional limitations of the power of the Legislature of these states when contracting debts are similar to those of our Constitution in this respect. We regard the earlier Oklahoma cases cited in behalf of the commission contrary to the Graham case, and also as unsound and in direct conflict with the later Graham case as well as the great weight of authority, including the opinions of this court. Stanley v. Townsend and Billeter & Wiley v. State Highway Commission, supra.

The construction of similar provisions of the Constitutions of Oklahoma and Montana as they were construed in the Oklahoma and Montana cases is not consonant with the Constitution of our state.

The case of Pace v. City of Paducah, 241 Ky. 568, 44 S. W. (2d) 574 and cases therein cited, are relied on by the commission as authority to sustain the validity of Senate Bill 454. The Pace case, and those cited in it, considered so much of section 158 of the Constitution as limits cities of the commonwealth when incurring an indebtedness. That portion of the section considered in the Pace case and others cited therein is as follows:

"Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

A mere comparison of this clause of section 158 with sections 49 and 50 is sufficient to show that the language, the intention, and meaning and purpose of section 158 and sections 49 and 50 are not in any sense similar.

The opinions construing section 158, therefore, have no bearing and shed no light on the intendment and meaning of sections 49 and 50. They are of no aid when construing these sections. As we have already stated, "a floating state debt cannot be created or exist under

the Constitution." Section 158 especially recognizes and provides for this character of debts and places same in the category of bonds.

Lastly, it is insisted that without the issuance and sale of bonds as provided for by Senate Bill 454, the outstanding auditor's warrants will depreciate in value, the credit of the state will be unduly affected, and the expenses of the state government cannot be defrayed. This argument with propriety might be addressed to the Legislature, but with the court it is not to be considered. We are deciding a question of *power* only.

The Constitution in its language, meaning, and purpose is inflexible and permanent, and it is in those respects that its efficacy and strength may be found. It therefore may not be disregarded, deflected, or departed from through any consideration of expediency or to meet a temporary condition. It is, therefore, unnecessary and not required so to treat it in this case.

At the risk of repetition, we again declare that section 171 of that instrument amply clothes the Legislature with plenary power to provide for the levy and collection of annual revenues with which to pay all outstanding auditor's warrants if in its wisdom it concludes that it is the better plan. But if it should not so conclude it may then submit to the voters of the state the proposition of the contracting of a debt by the issuing of bonds with which to raise funds for the purpose of paying such warrants, and which power is conferred upon it by section 50 of the Constitution. Hence, it follows that the funding of the warrants by borrowing money or issuing bonds without a submission of that method to the people for their ratification, as is attempted to be done by the attacked statute in this case, is without constitutional warrant.

Wherefore, the judgment is affirmed.

Whole court sitting.