FLOYD R. GIBSON, Senior Circuit Judge,
dissenting.
I believe that the interest payments at issue were made not later than 45 days after the debt was incurred, and therefore dissent.
I agree with the majority that the issue is when a debt is incurred, and further agree that “a debt is incurred on the date upon which the obligor first becomes legally bound to pay.” P. 1221, ante, and cases cited therein. Our disagreement is in determining when the obligor (IPSCO) first became legally bound to pay. While the majority holds that IPSCO became obligated to pay the interest when the note was executed, I would hold that IPSCO was not obligated to pay the interest until the interest accrued each day.[1] I reach my conclusion because the execution of the note merely created a contingent obligation on IPSCO’s part to pay interest, and I believe section 547(c)(2)(B) only applies to fixed obligations.
To understand the contingent nature of the interest payments, one must realize that the principal and interest payments were distinct obligations. When IPSCO executed the note, it obligated itself to pay the principal, but interest payments were contingent on IPSCO’s retaining the use of the money loaned to it by the Bank. If IPSCO paid the principal, it would not have been legally bound to make the interest payments at issue.
IPSCO was in a position like that of a customer of an electric utility. The customer agrees to pay for whatever electricity it uses, but the debt to the utility is not incurred until the resource is consumed. A customer does not incur a debt when it makes the original deal with the utility. Likewise, IPSCO agreed to pay interest for the use it made of money, but the debt was not incurred until IPSCO actually used the money. This analogy is found in a case relied on by the majority at p. 1221, ante. Barash v. Public Finance Corp., 658 F.2d 504, 509 (7th Cir. 1981), quoting 4 Collier ¶ 547.38. See also In re Ken Gardner Ford Sales, Inc., 10 B.R. 632, 647 (Bkrtcy.E.D.Tenn.1981). Therefore, IPSCO was not legally bound to pay the interest debt until each day’s interest accrued. The situation would be different if IPSCO agreed to pay a sum certain in interest regardless of when the principal was paid.
I do not believe that section 547(c)(2)(B) refers to the incurrence of a contingent obligation. The section refers to situations where a “debt” is incurred. Generally, the word “debt” refers to fixed obligations, while “liability” can refer to contingent obligations which can ripen into a debt. 26 C.J.S. Debt at 5-6 (1956). See also Black’s Law Dictionary 363, 823 (rev. 5th ed. 1979); Public Market Co. v. City of Portland, 171 Or. 522, 130 P.2d 624, 643 (1942); McClintock & Robertson v. Cottle County, 127 S.W.2d 319, 322 (Tex.Civ.App.1939); State Budget Commission v. Lebus, 244 Ky. 700, 51 S.W.2d 965, 969 (Ct.App.1932).
Because we are dealing with a matter of statutory construction, the usual meaning of “debt” is not necessarily controlling. However, I believe that reading “debt” in the usual way is consistent with the legislative history and policies behind the Act. The primary purpose of the section 547(c)(2) exception “is to leave undisturbed normal financial relations, because it does not detract from the general policy of the prefer *1223 ence section to discourage unusual action by either the debtor or his creditors during the debtor’s slide into bankruptcy.” Barash, 658 F.2d at 510, citing H.R.Rep.No. 95-595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6329; S.Rep.No. 95-989, 95th Cong., 2d Sess. 88 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5874. Reading section 547(c)(2)(B) to consider the debt at issue as incurred when the interest accrued would leave normal financial relations undisturbed. I agree with Judge Kelley’s analysis in Ken Gardner that “[t]he policy of protecting payments in the ordinary course of an ongoing business relationship easily extends to these interest payments.” 10 B.R. at 648.
There is support for the view that section 547(c)(2)(B) was not meant to include situations like the one involved here. The principal source of support is a law review article by a member of the committee staff that drafted the legislation. The author stated that the exception in section 547(c)(2) was meant to apply to short-term credit transactions. Barash, 658 F.2d at 511, citing Levin, An Introduction to the Trustee’s Avoiding Powers, 53 Am.Bankr.L.J. 173 (1979). However, I am not persuaded by this article because the statute is not couched in terms of short-term credit transactions or receipt of new value by the debt- or in the 45-day period. See Ken Gardner, 10 B.R. at 647.
The cases relied on by the majority are consistent with my reading of section 547(c)(2)(B). All three cases, Barash, In re McCormick, 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980), In re Bowen, 3 B.R. 617 (Bkrtcy.E.D.Tenn.1980), dealt with installment payments which were mixed principal-and-interest payments. Under my reading of the statute, the courts might have segregated the portion of the payments that were interest. Their failure to do so does not suggest a rejection of my analysis. In Bar-ash, the court did not state whether prepayment would have affected the obligation to pay interest. Therefore it is not clear whether the interest portion of the payments was a contingent obligation. Furthermore, the courts in all three cases seemed to consider only the date of execution or the due date as possible times at which the debt was incurred; they did not consider the date of accrual as I have suggested. Finally, both Barash and McCormick rely on Bowen. The judge who decided Bowen recently decided Ken Gardner, in which he distinguished the installment payments in Bowen. The court found that installment payments merely reflected the nature of the loan as an extension of credit, and payments that were entirely interest payments were not “incurred” until they accrued. 10 B.R. at 646-47.
Because of the usual meaning of the words in the statute, the policies behind the statute, the lack of precedent to the contrary, and the support of the Ken Gardner case, I would hold that the debt was incurred for purposes of section 547(c)(2)(B) when the interest accrued on each day, and thus the payment thereof in the usual course of business within 45 days of accrual date of the interest did not constitute a preference.

. I am not arguing that the due date is relevant, as the majority suggests, p. 1221, ante. The issue is whether the debt was incurred when the note was executed or when the interest accrued.