CASE 15.—THREE ACTIONS, ONE BY THE STATE UNIVERSITY, ANOTHER BY THE BOARD OF REGENTS FOR THE EASTERN KENTUCKY NORMAL SCHOOL, AND THE THIRD BY THE BOARD OF REGENTS FOR THE WESTERN KENTUCKY STATE NORMAL SCHOOL, ALL AGAINST F. P. JAMES, AUDITOR OF THE STATE.—December 18.

## James, Auditor, v. State University, &c.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiffs. Defendants appeal. Affirmed.

1. States—Funds—Appropriations.—The State University and the State Normal Schools are among the educational institutions, for which, under the proviso of Const. section 184, the Legislature may make appropriations without submitting the ques-

2. Schools and School Districts — Funds — Appropriations. — Neither the change of the name of the "Agricultural & Mechanical College of Kentucky" to "State University, Lexington, Kentucky," by Act March 15, 1908 (Acts 1908, p. 22), nor

James, Auditor, v. State University, &c.

transfer by such act of its normal work proper to the State Normal Schools, the collegiate department of pedagogy being retained, destroyed its identity as a public corporation and state institution as respects the matter of appropriation therefor.

3. States—Appropriations—Indebtedness.—Whether an appropriation is a debt within Const. sections 49, 50, prohibiting the Legislature contracting an indebtedness in excess of $500,000 to meet casual deficits or failures in the revenues, or contracting a debt for any other purpose, except with a provision for levy and collection of a tax to meet it, depends on the character of the appropriation and the manner of its payment; and Act March 16, 1908 (Acts 1908, p. 22), appropriating $200,000 for buildings for state educational institutions, to be paid in three equal sums, in December of three successive years, and $70,000 for their current expenses of the year, and for each succeeding year, will not be held to contravene such sections; it not appearing that, when the payments are to be made, there will be such a deficit.

JAMES BREATHITT, Attorney General, for appellant.

POINTS DISCUSSED AND AUTHORITIES CITED

1. Origin of A. & M. College—Change of name. Statement of case. (Session Acts 1879 p. 18; Session Acts 1879 p. 38; Session Acts 1879 p. 101; Session Acts 1908 p. 4; Dartmouth College v. Woodward, 4 Wheat 530 (4:69); Trustees N. Gloucester School Fund v. Bradbury, 26 Am. Dec. 515; Yarmouth v. North Yarmouth, 34 Me. 411; State Ex. Rel. White v. Neff, 28 L. R. A. 409; Regents v. Williams, 31 Am. Dec. 72; 2 Kent Commentaries, 273-299; Angell and Ames, Corporations, 410; 2 Kyd., Corporations, 174; Phillips v. Berry 1 Lord Raymond, 5 S. C., 2 Ky. Law Rep. 546; Senn v. Levy, 111 Ky. 308.)

2. Neither of the Normal Schools is mentioned in the Constitution, nor fairly included in provisions of section 184. (Constitution, sections 183-184; Session Acts 1908, p. 22; A. & M. College v. Hager, 27 Ky. Law Rep. 1178; Marsee v. Hager, 31 Ky. Law Rep. 79; Session Acts 1906, p. 393.)

3. The Act of March 16, 1908, appropriating large sums of money to the State University and the Normal Schools, creates a debt against the State in violation of the Constitution, and is, therefore, void. (Beard v. City of Hopkinsville, 95 Ky. 239; Constitution, sections 49-50; French v. Burlington, 42 Iowa 614; Grant v. Davenport, 36 Iowa 396; Rollins v. Lake County, 34 Fed.

James, Auditor, v. State University, &c.

Rep. 845; Notes to Beard v. Hopkinsville, 44 Am. St. Rep. 229; Notes to Carr v. State, 22 Am. St. Rep. 647; Windsor v. Des Moines, 110 Iowa, 175; Addyston P. & S. Co. v. Curry, 80 Am. St. Rep. 833; In Re Appropriations, 13 Col. 316; People ex. rel. Hopkins v. Supervisors, 7 N. Y. 556; State v. Burke, 37 La. Ann. 434.)

J. A. SULLIVAN for appellee.

### POINTS DISCUSSED.

1. The purpose of the school legislation of the General Assembly.

2. When are appellees entitled to the money or parts of it appropriated for the education and- repair of buildings and the purchase of necessary real estate and equipment?

3. As one third will be due and payable December 1, 1908, July 1, 1909, an July 1, 1910, and as these dates are fixed in the act as the time when they shall be "due and payable," any balance not paid on or before said dates respectively, bear interest under the very language of the act from the dates on which they fall due?

4. Has the Auditor the right to subordinate an appropriation made by the General Assembly for a State educational institution, to all other State expenditures?

5. The appropriations to the three schools is made payable out of the revenue of three fiscal years, 1908, 1909 and 1910, and the uneasiness about the condition of our State treasury is wholly unauthorized.

6. Are the three institutions entitled to the additional appropriation made under the Act of 1908 for the year ending June 30, 1908? (A. & M. College v. Hager, and Marsee v. Hager, 27 Ky. Law Rep. 1179.)

W. O. DAVIS for appellee.

McQUOWN & BECKHAM, A. R. BURNAM, J. MORGAN CHINN and J A. SULLIVAN of counsel.

### AUTHORITIES CITED.

A. & M. College v. Hager, 27 Ky. Law Rep. 1179; Colorado Constitution, sec. 16, art. 10; Cooley on Constitutional Limitations, 204; Tathams Appeal, 80 Penn. 465; In re Casual Deficiencies, 21

James, Auditor, v. State University, &c.

Cal. 403; In re State Warrants, 6 S. D. 518; Burch v. Eberhart, 7 Oregon 66-67; State v. Kenney, 10 Mont. 488.

Opinion of the Court by Judge Settle—Affirming.

By an act of the General Assembly of the Commonwealth of Kentucky, approved March 16, 1908 (Acts 1908, p. 22), there was appropriated to the appellee the State University, Lexington, Ky., $200,000, or so much thereof as might be necessary for the erection and equipment of new buildings for its use, payment of its indebtedness, etc., and the further sum of $20,-000 for "the current fiscal year and for each succeeding year;" to the appellee Eastern Kentucky State Normal School, Richmond, Ky., $150,000, or so much thereof as might be necessary for the erection and equipment of a suitable dormitory and other buildings, and the further sum of $20,000 for "the current fiscal year and for each succeeding year;" to the Western Kentucky State Normal School, Bowling Green, Ky., $150,000 for like purposes and the additional sum of $30,000 for "the current fiscal year and each succeeding year." The act contains a provision to the effect that one-third of each of the lump appropriations mentioned should be due and payable on December 1, 1908; one-third July 1, 1909, and one-third July 1, 1910. Each of the appellees demanded of the appellant F. P. James, Auditor of the State, that he issue his warrants upon the State Treasurer for the payment of the annual appropriation due each for "the current fiscal year," and, in addition, the appellee the State University on September 8, 1908, made demand upon him for the sum of $2,000, that amount being due the contractor upon the architect's estimate at that time on the building of civil engineer-

ing and physics, in process of erection under the direction of the board of trustees, and in accordance with the provisions of the act of the Legislature. A like demand was made at the same time upon the Auditor by the appellee Eastern Kentucky State Normal School for the sum of $12,000, that amount being then due the contractor for work done upon the normal school buildings; but the Auditor failed and refused to issue his warrants upon the Treasurer in favor of the appellees, or any of them for the sums demanded or any part thereof. Following the refusal of the Auditor to issue the warrants demanded of him, appellees instituted these several actions against him in the court below to enforce the payment of such part of the appropriations made by the act in question as they are now entitled to, respectively and prayed that writs of mandamus be granted to compel the issual by him of warrants upon the State Treasurer therefor. The appellant, Auditor, filed an answer to each petition interposing several grounds of defense: (1) That the act making the appropriations is repugnant to section 184 of the State Constitution. (2) That the appellee State University in adopting its present corporate name in lieu of its former one ''Agricultural & Mechanical College,'' and in being separated from its normal school department by the transfer of that department to the Eastern and Western State Normal Schools, as provided by the act of March 16, 1908, lost its identity as a public corporation and State institution, and became a private corporation, which deprived it of the right to longer demand or receive financial assistance from the State. (3) That neither the Eastern nor Western Kentucky State Normal School is mentioned in the Constitution, nor fairly included in the provisions of section 184 of that

instrument. (4) That the appropriations made appellees by the act of March 16, 1908, when added to the necessary running expenses of the State government and other appropriations made by the General Assembly during its 1908 session, would exceed the annual revenues of the State by more than $500,000, and thus create a debt against the State in contravention of sections 49 and 50 of the Constitution. The three causes were consolidated and appellees filed demurrers to the answers. The demurrers were sustained by the circuit court, to which the appellant excepted. He thereupon declined to plead further, following which the lower court entered judgment declaring each of the appellees entitled to the relief sought, and directing a mandamus to issue in each of the cases against the appellant, Auditor, to compel the issual by him of his warrants on the Treasurer of the State for the amounts respectively demanded by appellees. Of that judgment appellant complains; hence this appeal.

We will consider the several matters of defense relied on by appellant in the order stated. With respect to the first contention made in the answers, we may say that the question of whether the appropriations in controversy are or not obnoxious to the provisions of section 184 of the Constitution depends upon whether appellees are among the educational institutions for which, under the proviso of that section, the Legislature is authorized to make appropriations without submitting the question to the voters of the State. Section 184 of the Constitution reads as follows: "The bond of the Commonwealth issued in favor of the board of education for the sum of one million three hundred and twenty-seven thousand dollars shall constitute one bond of the Commonwealth in favor of the board of education, and this bond and

the seventy-three thousand five hundred dollars of the stock in the Bank of Kentucky, held by the board of education, and its proceeds, shall be held inviolate for the purpose of sustaining the system of common schools. The interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for the purposes of common school education, shall be appropriated to the common schools, and to no other purpose. No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such taxation: Provided, the tax now imposed for educational purposes, and for the endowment and maintenance of the Agricultural & Mechanical College, shall remain until changed by law.'' We understand the question under consideration to have been definitely settled by this court as to all the institutions named. In the case of the Agricultural & Mechanical College v. Hager, Auditor, 121 Ky. 1, 27 Ky. Law Rep. 1178, 87 S. W. 1125, the court had under consideration the constitutionality of an act of the Legislature (Acts 1904, p. 288, c. 120) which made an annual appropriation of $15,000 to the college in question. It was contended in that case, as now insisted in the instant cases, that the appropriation was forbidden by section 184 of the Constitution; but the court held that this was not true, and that as it was apparent that the college, a State institution maintained by the State by taxation and through appropriations of public fund was in existence at the time of the adoption of the present Constitution, that the constitutional convention intended the proviso in section 184 to apply to it. Therefore the act of 1904 was valid; the Legislature having author-

ity under section 184 of the Constitution, and by virtue of the proviso therein, to make the appropriation in question without submitting the matter to a vote of the people. This conclusion of the court, as demonstrated by the opinion, was not only authorized by the language of section 184 of the Constitution, but was supported by the opinions of various members of the constitutional convention expressed in debate over that section, and likewise by the contemporaneous practical construction given it by all the departments of the State government, including the Legislature; the latter having, from time to time, covering a period of many years, made appropriations, in addition to the tax of half a cent on each $100 in force when the present Constitution was adopted, for the maintenance of the appellee institution now known as the State University. The opinion enumerated various educational institutions of the State, in addition to the appellee State University, which were at the time of the adoption of the Constitution owned by the State and being maintained by it through appropriations of public funds raised in whole or in part by taxation, and declared that these institutions were also included by the proviso of section 184, which should be understood to read as if they had been named therein. The several institutions thus named, the opinion holds, the State was left free to continue by necessary appropriations, without submitting them to a vote of the people, till such time as the right to do so, in the language of the proviso in section 184, shall be "changed by law." All that was said in the opinion, supra, in upholding the constitutionality of the appropriation of $15,000 made by the act of 1904 to the Agricultural & Mechanical College, we may, with equal propriety, apply to

the appropriations made to each of the appellees in these cases by the act of March 16, 1908.

Neither the change in the name of the appellee State University or the separation from it of its Normal School department destroyed its identity as a public corporation and State institution, as claimed by appellant. The act changing the name of the "Agricultural & Mechanical College of Kentucky," to "State University, Lexington, Kentucky," expressly retains and preserves to the institution under the new name all the rights and privileges it had and exercised under its old name; and, in order that no doubt might occur or question arise as to the status of the institution after the change of name, the act provides that it shall be maintained by the Commonwealth; that no previous act making provision for it under the old name shall be affected by the change of name; that all moneys to which the institution will be entitled from the federal and State governments shall be paid to it in its present name, "State University," and that all educational or other work formerly done by the institution under the old name except what appertains to the Normal School department shall be performed by it under the new one. Its work, plans, and corporate status continue as under the old name. The institution is still officered by trustees appointed by the Governor of the State by and with the consent of the Senate; the Governor and Superintendent of Public Instruction being ex-officio members and the former chairman of the board. In brief, the University is the creature of the State, a mere instrumentality, employed by it "to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life." An apt suggestion contained in the brief of appellees' coun-

sel will illustrate our meaning. Would a devise made by John Smith to his daughter, Mary Smith, become void if she should by marriage change her name to Mary Jones? Certainly not. While the devise was made to Mary Smith, manifestly it was not the name of the daughter that supplied the motive for the devise, but it was the person, the fact that she was his daughter, that he had on that account an affection for her, and that she was entitled to his bounty, that moved the testator to provide for her. In becoming Mary Jones she enters upon a new and perhaps happier sphere of life, but the change of name or manner of living will not affect the devise. So, while the State institution of learning at Lexington, now called "State University," was the "Agricultural & Mechanical College" mentioned in the State Constitution and in the statutes of the State previously, and even since, enacted by the Legislature, it is nevertheless the same institution, possessing the same corporate existence, powers, and privileges, and engaged in the same beneficent work, and what the State has done for it was not because of its name, but because of its work. The new name neither adds to or detracts from the worth or mission of this temple of the arts and sciences founded by the Commonwealth, but is more readily pronounced than the old one, and more in keeping with the relation it sustains to the cause of education and a people whose pride and sympathy are enlisted in its success. A glance at the history of the institution will suffice to show that it was designed to be conducted as and to do the work of a university. That there is a distinction between the college and the university no one can doubt. It seems to be the mission of the college "to impart to the student known facts. It deals with a body of knowledge more

or less complete, which has come to the present generation as a legacy. The university, on the other hand, while covering and including the college work in its undergraduate courses, seeks to add to this known body of knowledge by original investigation and research and new discoveries in the fields of science, and thus to widen and enlarge the boundaries of human knowledge.''

A university may include several colleges or departments of education, and it was for the purpose of converting the Agricultural & Mechanical College into such a university in name, and thereby give it a title that would comport with its past and future work, that the Legislature by the act of March 16, 1908, changed its name to ''State University, Lexington, Kentucky.'' Section 4 of the act provides: ''That the requirements of the law of Congress approved July 2, 1862, for the instruction in these branches of learning, relating to agriculture and the mechanical arts and to military tactics, shall be carried out fully, and that these branches shall continue to be integral and indispensable courses of instruction in the State University; and that in addition to the other colleges of said University, one of the colleges shall be denominated the Agricultural College, and another the College of Mechanical Arts of the State University.'' By the same act other departments in addition to those mentioned above, such as a department of education with collegiate rank leading to the usual degree in pedagogy, a department of law, one of medicine and perhaps others, were added to the State University, but the addition of these departments merely enlarged the work of the institution without destroying its identity as a State institution, relieving it of State control, or affecting

its right to receive financial aid from the State gov-
ernment. The separation from the appellee State
University of its Normal School department did not
affect its legal status, but merely served to transfer
the normal work proper to the regular institutions
created by the Legislature for the purpose of con-
ducting it, viz., the appellees Eastern and Western
State Normal Schools, which are auxiliaries of the
State University and better able to conduct that
department of educational work than the State Uni-
versity. But this arrangement still left to the State
University the collegiate department of pedagogy for
still higher training in the art of teaching than the
Normal School can afford. It is patent, therefore,
that the State University has yet a department of
education, which, though connected with the normal
work, was not transferred to the State Normal School.
The arrangement by which the normal school work
proper is confined to the two State Normal Schools
is apparently a most excellent one. The State Nor-
mal Schools constitute a part of the common school
system of the State, and the object of the Legislature
in establishing them was to more fully carry into
effect the provisions of section 183 of the State Con-
stitution by giving to the teachers of the Common-
wealth such training in the common school branches,
science and art of teaching, and in such other branches
deemed necessary by the normal executive council as
will enable them to make the schools throughout the
State efficient. While the State has for quite a num-
ber of years collected by taxation an annual school
fund sufficient to have had good schools for the edu-
cation of her youth, in point of fact much of it has
practically been wasted, and the schools have proved
deficient. Perhaps one of the principal causes for

this state of things has been the lack of a sufficient number of qualified and competent teachers. The two State Normal Schools should supply this long felt want, and, if sufficiently equipped will do so, by educating and turning out each year young men and women specially trained and skilled in the art of teaching. A certain number may be sent every year to these institutions from each county of the State free of tuition, and it was conceded in argument that hundreds from all parts of the State are already taking advantage of the opportunities for special training afforded by these schools, in order that they may qualify themselves for the very honorable and highly useful work of teaching. Whether, as suggested in argument, the appropriations in question were inspired by an awakening upon the part of the people of Kentucky and its Legislature upon the subject of education, we need not inquire; but it is manifest that with the facilties afforded by the common schools, high schools, and State University for the education of the youth of the State, and those afforded by the Normal Schools for the training of teachers, neither inspiration nor prophetic vision is required to enable those concerned for the welfare of the Commonwealth to see that the time is near at hand when much of the illiteracy that is now a curse to the State will give place to greater general intelligence, and in consequence greater respect for law and order. While it is true, as claimed by appellant, that neither of the State Normal Schools is mentioned in the Constitution of the State, we do not concede, as he further contends, that they are not included by the provisions of section 184 of that instrument. On the contrary, they are, as we have already indicated, so included.

In the case of Agricultural & Mechanical College v. Hager, Auditor, supra, the opinion in enumerating the educational institutions of the State embraced in the proviso of section 184, named the State Normal School for Colored Persons, as one of them. In commenting on that fact in the latter case of Marsee v. Hager, Auditor, 125 Ky. 445, 101 S. W. 882, 31 Ky. Law Rep. 79, which involved the construction of an act establishing· a system of normal schools in the State, creating a board of regents to control them, and appropriating $50,000 for the benefit of the schools to be established, the court said: "It was not intended by the enumeration of the various institutions set forth therein to present an exhaustive catalogue, but only to name certain institutions as illustrating the kind of educational interests which the convention intended to place within the benefits of the proviso. It was not intended to say there were no other institutions, although they were not then in the mind of the court, for whose benefits the Legislature might appropriate money from the treasury. In mentioning the State Normal School for Colored Persons as one of the institutions for which appropriations from the treasury are permissible, it was intended to convey the idea that normal schools as a department of public education, whether for white or colored persons, are among the educational purposes introduced in the proviso, of section 184. It would be a serious construction, indeed, that would establish the principle that the Legislature might appropriate money for, the benefit of a normal school for colored teachers, but not for white. At the time the present Constitution was framed, the normal school for white persons was carried on as a part of the Agricultural and Mechanical College where it

still, in part, is conducted.  What the act in question does in practical effect is to separate that school into three parts, leaving one as a department of the Agricultural & Mechanical College at Lexington, and establishing two others at different points, in the State, one at Richmond, and the other at Bowling Green, Ky.  There is nothing in section 184 or any other part of the Constitution to which our attention has been directed that militates against the power of the Legislature to separate the normal school for white persons into as many parts as may be deemed appropriate and to divide the appropriation between the different schools as may be thought proper.  Certainly it will not be contended that the Legislature lacks the power of making any appropriation it sees fit for the normal school as conducted under the auspices of the Agricultural College.  * * *  This is conclusive of the question at bar.  Normal schools are among the institutions for which under the proviso of section 184 the Legislature is authorized to make appropriations without submitting the questions to a vote of the people, and therefore the act under consideration must be held valid.''  The opinions in the cases, supra, are also conclusive of the validity of the act making the appropriations sought to be recovered in the cases before us.

It yet remains to consider the fourth and final contention of appellant, which is that payment of the appropriations claimed would create a debt against the State of more than $500,000 in excess of its revenues, which would be violative of the provisions of sections 49 and 50 of the Constitution.  Sections 49 and 50 were a part of the Constitution of 1850.  At that time the State was greatly in debt on account of internal improvements, and the proceedings and

debates of the convention which framed that instrument prove that the sections in question adopted for the purpose of restraining the Legislature from further indulgence in reckless investment of the State's money and credit in internal improvements. Looking to the contemporaneous practical construction of these two sections of the Constitution for guidance in arriving at a solution of the questions raised by appellant's final contention, we find that the Legislature has since the adoption of the present Constitution passed like acts to that under consideration appropriating large sums of money to such institutions as appellees, which have been approved by the sinking fund commissioners and other executive boards of the State, and audited and paid by its ministerial officers without doubt or question. The value of contemporaneous construction is well stated in Agricultural & Mechanical College v. Hager, Auditor, supra, wherein the court, in speaking of such construction with respect to section 184 of the Constitution, said: "This long and unquestioned construction coming up for actual decision at least several times each year ought to have, and by the rules of the courts does have, great weight in resolving any doubt that the words themselves may have left as to the meaning of this section." In Eastern Kentucky Asylum, etc., v. Bradley, 101 Ky. 551, 19 Ky. Law Rep. 750, 41 S. W. 556, the constitutionality of an act authorizing the issue and sale by the State of $500,000, of bonds for the funding of certain indebtedness of the State, created in part on account of the several asylums for the insane, was under consideration. The court said: "This is the first exercise of authority under section 49; and, as the existence of a deficit sufficient in amount to warrant the exhaustion by the General

'Assembly of the power conferred by the Constitution has been averred, we see no good reason for denying to the General Assembly the right in this act to proceed to the limit of its constitutional power." Also in the case of Hager, Auditor, v. Gast, &c., 119 Ky. 502, 28 Ky. Law Rep. 129, 84 S. W. 556, the court in respect to sections 49 and 50 of the Constitution said: "These provisions of the Constitution do not embrace the ordinary expenses of the government. The State may repair its blind institute, or build a road to it, to make it more accessible, or conduct its ordinary affairs without making a special levy for this purpose."

The bearing of the last decision on the question involved in these cases is apparent, for, if the provisions of sections 49 and 50 of the Constitution do not embrace the ordinary expenses of the government, and the State has the right to repair its institute for the blind without a special levy, surely it has the right to make an appropriation to equip or repair its State University or State Normal Schools without making a special levy for the purpose. It is, we think, further manifest that appropriations such as these cannot fairly be said to create an indebtedness against the Commonwealth, for they may be discontinued, reduced, or changed at the pleasure of the Legislature, or that body might at its next session repeal the act as to so much of the appropriations as would then remain unpaid; but these things could not be done if the appropriation were a debt. Such was the doctrine announced in the case of Hager, Auditor, v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 26 Ky. Law Rep. 1133, 67 L. R. A. 875 wherein the court having under advisement the constitutionality of an act appropriating $15,000 to the Kentucky

Children's Home Society, said: "Nor does the appropriation create an indebtedness against the Commonwealth. It may be discounted, reduced, or changed at the pleasure of the Legislature which would not be done if it was a debt. It is a gratuity, just as the present provision for the support of the insane and idiots is, which may be altered both as to the amount and manner of application at the pleasure of the law-making body. We find nothing in the act violative of the Constitution. Its subject is one wholly within the sound discretion of the Legislature." We may, however, concede, and do concede, that under sections 49 and 50 of the Constitution the Legislature has not the power to make appropriations in excess of the revenues provided by law and the cash in the treasury, whereby a deficit of more than $500,000 may be created. In these cases it does not appear that such a state of affairs exists because of the appropriations in dispute, as only one-third of the lump appropriations is payable in the current year. Whether, therefore, an appropriation is a debt in the meaning of sections 49 and 50 of the Constitution, must depend upon the character of the appropriation, and the manner of its payment. The fact that the payment of all the appropriations made by the last Legislature as contemplated by that body would have created a large deficit in the State treasury at the close of the last fiscal year (June 30. 1908), or when these actions were instituted, is not pertinent. That there may have been a large deficit at those times can be true, and yet a full treasury at the time the Auditor should pay the appropriations to appellees, for the State revenue, that is the bulk of it, is not paid into the treasury until the fall months, and this year the last day for the payment

of taxes was changed from November 1st to December 1st; thus delaying the receipt of the revenues a full month. The last Auditor's report discloses that while there was a deficit of at least $250,000 on June 30, 1907, yet on December 1st of that year there was in the treasury over $1,500,000. No showing was made, or could be made, by the answers of what amount would be in the State treasury December 1st or will be therein when it will be necessary to pay the several amounts now demanded by appellees; and, while it is doubtless true that the expenses of the State government during the fiscal year ending June 30, 1908, have been greater than usual, as the bulk of the revenue for the year 1908 was received since the filing of appellant's answers, and much of it is yet to be collected, and as it is conceded that the revenues for 1908 will be larger than in any previous year, we will not assume that the payment of such parts of the appropriations as are now demanded by appellees, or that the payment of the remainder of the appropriations when due, will cause a deficit in the treasury or so add to the indebtedness of the State, as to violate the provisions of its Constitution.

An examination of the published acts of the session of 1908 will show that the act making the appropriations for the benefit of appellees was passed with an emergency clause, and that, with the exception of a small one of $15,000, the appropriations to appellees were the first made by the Legislature during that session; and if, as claimed by appellees, the State has paid some of the appropriations which were made at that session after those to appellees were made, the question may well be asked: Is it the province of the Auditor, instead of paying the appropriations in the order made by the Legislature, to select and pay

only such of them as he may think should be first paid, and in so doing make it impracticable to pay other appropriations antedating them, because their payment would perchance create a deficit in the revenues in excess of $500,000? We do not understand that the acts of the Auditor can thus affect the constitutionality of an act of the Legislature. If, however, a deficit should exist at any time, it will be time enough for the Legislature in its discretion and by virtue of the authority vested in it by section 49 of the Constitution to meet such casual deficit or failure in the revenue, and, to the extent of $500,000, contract a debt to pay the same.

The Auditor has three years to complete the payment of the lump appropriations made the appellees by the act of March 16, 1908. Only one-third of the lump appropriation for each institution is now due, and the payment of such third is all that can be demanded by them. The amount thus claimed they are entitled to as well as the further sum of $20,000 to the State University, a like sum to Eastern Kentucky State Normal School, and $30,000 to the Western Kentucky State Normal School, the last-named sums being the annual allowance due the appellees, respectively, for the current fiscal year.

The judgment of the circuit court in each case is affirmed.