E. Bruce BLYTHE, et al., Appellants,

v.

TRANSPORTATION CABINET OF the COMMONWEALTH of Kentucky and Turnpike Authority of Kentucky, et al., Appellees.

Supreme Court of Kentucky.

Aug. 31, 1983.

As Modified on Denial of Rehearings Dec. 22, 1983.

S.J. Stallings, Peter L. Ostermiller, Stallings & Stallings, Louisville, for appellants.

Charles S. Cassis, C. Edward Glasscock, Brown, Todd & Heyburn, Louisville, A. Stephen Reeder, Transportation Cabinet, Commonwealth of Kentucky, Frankfort, for appellees.

William P. Curlin, Frankfort, for special amicus curiae.

GANT, Justice.

Appellant filed this petition in the Franklin Circuit Court, asking that court to declare unconstitutional any bonds issued pursuant to HB 931 (Chapter 109, Part IV) and HB 295 (Chapter 398, Part IV) and to permanently enjoin the appellees from issuing any bonds under the authority granted in KRS 175.750 to 175.810.

The statutes herein questioned are listed under the general heading "Economic Development Road Projects," and provides for the issuance of bonds by the Turnpike Authority of this state in an amount "up to $300,000,000 in the 1982–84 biennium for the construction and reconstruction of roads." KRS 175.770 and KRS 175.780 stipulate that the Turnpike Authority shall utilize and employ "all of the authority, rights and procedures granted to the authority by KRS 175.410 to KRS 175.690, inclusive," and that such is subject to the limitations contained in the biennial appropriations act. In essence, the statutes provide for the authority to lease to the Department of Transportation subject to a project, the lease payments to be made by the Department from funds appropriated to it each biennium by the legislature, the improvements, construction and reconstruction costs to be paid from the bonds. It is further provided that the bonds do not constitute a debt of the Commonwealth, and there is no binding commitment by the legislature to appropriate funds.

After the complaint herein was filed, appellees moved for judgment on the pleadings, which motion was granted and judgment and orders were entered dismissing the appellant's complaint. Direct appeal to this court was granted.

■ It is our opinion that language in KRS 175.770 and 175.780 that the turnpike authority shall have, use, utilize and employ "all authority, rights and procedures provided by ... KRS 175.410 to KRS 175.690, inclusive," of necessity includes any limitations on such authority or right provided by those sections, and we so construe that language. Thus, it is the opinion of this court that all issues presented herein were identical to those presented to the court in the case of *Turnpike Authority of Kentucky v. Wall,* Ky., 336 S.W.2d 551 (1960). That case concerned the authority of the Turnpike Authority to construct toll roads, issue revenue bonds to finance them and to lease said turnpikes to the Department of Transportation for an agreed rental. This rental was to be paid from various sources, including appropriations not to extend beyond the biennium made by the legislature to the Department to defray the expense of the lease. The court in the *Wall* case stated as follows:

It may be conceded as fundamental that the legislature can authorize the commitment of revenues anticipated during the biennium for which its appropriations are to be budgeted (citing cases). Therefore, to the extent that the Department is authorized to obligate all or any part of its previously unencumbered revenues anticipated for this two-year period there is no question.

■ The *Wall* case went on to hold that the statutory plan for financing such bonds, identical to the one here, was not unconstitutional in violation of § 49 and § 50 of the Kentucky Constitution. Additionally, we find no applicability of § 178 of the Kentucky Constitution.

■ It has long been the law in Kentucky that judgment on the pleadings will be granted if, on the admitted material facts, the movant is clearly entitled to a judgment. *See Archer v. Citizens Fidelity Bank & Trust Company,* Ky., 365 S.W.2d 727 (1963); 6 Clay, *Kentucky Practice,* (3d ed. 1974); Civil Rule 12.02, p. 200. It is the

opinion of this court that all issues raised by the appellant herein were disposed of in *Turnpike Authority of Kentucky v. Wall, supra,* and that no issue remained.

■ No bonds having been issued pursuant to the statutes before us, nothing in this opinion is intended to nor does it reflect on the validity of the bonds themselves, which may be subject to subsequent litigation. Further, this opinion is not authority for the appellees to enter contracts and expend money in the contemplation of the issuance of bonds.

The judgment and orders of the Franklin Circuit Court are affirmed.

STEPHENS, C.J., and GANT, LEIBSON and WINTERSHEIMER, JJ., concurring.

AKER, STEPHENSON and VANCE, JJ., dissenting.

VANCE, J., files herewith a dissenting opinion in which AKER and STEPHENSON, JJ., join.

VANCE, Justice, dissenting.

By the enactment of House Bill 931 (Chapter 109 Part IV) in 1980 and House Bill 295 (Chapter 398 Part IV) in 1982, the General Assembly authorized the Transportation Fund a bond fund authorization up to $300,000,000 for the construction, rehabilitation, and reconstruction of roads in the Kentucky Primary road system and authorized the expenditure of funds appropriated to the Transportation Fund for related debt service payments or lease rental payments to the Kentucky Turnpike Authority.

This action was brought as a declaratory judgment action seeking a declaration that any bond issue pursuant to those authorizations is prohibited by the Constitution and laws of Kentucky and seeking an order permanently enjoining the appellees from proceeding with any such bond issue. The action was dismissed in the trial court and we granted a transfer of the appeal to this court.

The particular acts in question do not specify that any bonds issued pursuant to the authorization contained therein shall be issued by the Turnpike Authority pursuant to the provisions of K.R.S. 175.410 to K.R.S. 175.810. All parties, however, proceeded as though that were the case.

K.R.S. 175.410 to 175.810, inclusive regulate the issuance of revenue bonds by the Turnpike Authority in three different categories; namely, turnpike revenue bonds (K.R.S. 175.410–175.630), resource recovery road revenue bonds (K.R.S. 175.640–175.-690), and economic development road revenue bonds (K.R.S. 175.750–175.810). If the authorization contained in the two acts in question is simply an authorization for the issuance of bonds not exceeding $300,000,-000 by the Turnpike Authority pursuant to its powers under K.R.S. 175.410–175.810, the bonds must necessarily fall into the category of economic development road revenue bonds because the purpose of the authorization is for construction, reconstruction, and rehabilitation of roads in the primary road system.

K.R.S. 175.760(4) defines an economic road development project as:

The construction, reconstruction or relocation of any highway, road or thoroughfare as such part or parts thereof as shall have been designated by the department to constitute a part of the economic development road system of the Commonwealth, which project may include the construction, reconstruction, repair or relocation of highways, roads, thoroughfares, bridges, tunnels, overpasses, underpasses, interchanges, approaches and connecting highways.

Even though the majority holds that the statutory authority to construct "economic development road projects" incorporates all of the authority, procedures and rights provided by K.R.S. 175.410 to K.R.S. 175.690 inclusive and likewise incorporates all of the limitations contained therein upon the exercise of such authority, rights and procedures, I do not concur in the opinion of the majority that *Turnpike Authority of Kentucky v. Wall,* Ky., 336 S.W.2d 551 (1960), disposed of all issues raised by this proceeding.

The provisions of Sections 49 and 50 of the Kentucky Constitution were clearly designed to restrict the power of the General Assembly to obligate the revenue of the Commonwealth beyond the biennium of the Assembly. One issue sought to be raised here is that although the language of the statutes, on their face, may be held to prevent any obligation upon the department to continue its lease with the Transportation Authority beyond any biennium, as a practical matter the Department of Transportation may be bound to renew the leases in each successive biennium until the bonded indebtedness is retired because to do otherwise would utterly destroy the credit of the state.

The dismissal of the action summarily by the trial court preempted the introduction of evidence on this point, but it was conceded by the appellees on argument that once the proposed bonds are issued under these statutes the department would be under great pressure to renew the leases with the Transportation Authority until the retirement of the bonds in order to protect the credit of the state. The option to renew or not to renew the leases in future years under these circumstances is scarcely a free choice. To some extent a bond issued pursuant to these statutes, if not a debt, is at least an obligation which future administrations will find difficult to disavow. To that extent the clear intent of Constitution Sections 49 and 50 to limit the power of the General Assembly to obligate future revenues of the Commonwealth beyond a two-year period will have been circumvented.

An act which appears constitutional upon its face may nevertheless be unconstitutional in its application. I do not believe that *Turnpike Authority v. Wall, supra,* addresses the constitutionality of these acts in their application.

In *Commonwealth v. O'Harrah,* Ky., 262 S.W.2d 385, 389 (1953) we wrote:

"Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation."

In appraising the validity of the statute we must look through the form of the statute to the substance of what it does. The courts may not countenance an evasion or even an unintentional avoidance of our fundamental law.

This dissent is not meant to impugn the validity of bonds heretofore issued and validated under the principles announced in *Turnpike Authority v. Wall.* I simply believe that *Wall* is not conclusive of all the issues raised by appellant.

Since the majority opinion makes it plain that it is not intended to constitute validation of the actual issuance of bonds under these statutes, the validity of any bonds proposed to be issued under the authorization in question here remains open for consideration in a proceeding in which the terms of the proposed bonds and the proposed leases between the Turnpike Authority and the Department of Transportation will be before the court.

AKER and STEPHENSON, JJ., join in this dissent.