**Noel D. WILSON, Movant,**

v.

**KENTUCKY TRANSPORTATION CABINET and Kentucky Turnpike Authority, Respondents,**

and

**Landrum & Shouse, Special Amicus Curiae appointed by Supreme Court pursuant to CR 14.03, Special Amicus Curiae.**

**No. 90–SC–000835–I.**

Supreme Court of Kentucky.

Nov. 8, 1990.

On review from Court of Appeals 90–CA–2244–I Franklin Circuit Court; William L. Graham, Judge (90–CI–1557).

VANCE, Justice, dissenting.

Respectfully, I dissent. As the majority opinion notes, the only issue to be decided at this time is whether the sale of so-called revenue bonds should be enjoined until such time as the courts have finally decided on the merits the question of the validity of the bonds.

A compelling reason for delaying the sale of the bonds until the validity of the issue is decided is that should we permit the bonds to be sold and the money spent, and then at a later date hold that the bonds are invalid and that the bondholders have no recourse to recover their investment, it would cause utter devastation to the fiscal integrity of the state, a fact admitted by counsel for the Commonwealth at oral argument.

All parties admit that the Kentucky Constitution prohibits the creation of debt by the Commonwealth in excess of $500,000.00 without a vote of the citizens of the state approving of the bond issue and a tax sufficient to retire the bonds over their lifetime.

Since there has been no referendum and no tax levied with respect to these bonds, they are admittedly illegal if, in fact, they create a debt. Consequently, all parties will admit the bond issue should be enjoined if it creates a debt.

The only argument advanced for the constitutionality of this bond issue is that it does not create a debt because the General Assembly is not legally obligated each two years to appropriate money to retire the bond issue. If the legislature should fail in future years to appropriate from the general revenues a sufficient sum to retire these bonds, then the bondholders are simply stuck with a worthless piece of paper issued by the state to raise money for public purposes. To allow this to happen would be the moral equivalent of allowing the state to print and circulate counterfeit money. It would constitute a fraud committed by the Commonwealth and should be enjoined upon that ground.

Thus, it seems to me, that this bond issue will either constitute a debt in violation of the constitution or else it will enable the Commonwealth to perpetrate a fraud, and in either event, it should be enjoined.

The insidious reasoning which underlies the issuance of bonds of this ilk is that they are constitutional because the statute and the bonds themselves state that they are not a debt, but that no fraud upon bondholders will ever be committed because the necessity to repay is so compelling that future legislatures will have no choice except to appropriate out of current revenues the funds necessary to retire the bonds. Sadly, this specious logic has some basis in fact. The General Assembly has never in the past allowed a default on any of the $2,400,000,000 in so-called revenue bonds that past administrations have saddled upon future administrations.

The reason, I submit, is that while it is said that any future General Assembly can, if it desires, repudiate the bonds by failing to appropriate money to retire them, the plain truth is that the General Assembly cannot do so. The failure to pay the bonds would have such disastrous effects upon the fiscal integrity of the state that the General Assembly has no choice, in each biennium, except to grant first priority to the payment of the debts saddled upon it by the issuance of the revenue bonds in past administrations.

The result of this is that the tax money which comes into the road fund in any year cannot be used for current needs until the indebtedness of the past is paid off. And so in time, the current road funds became so encumbered by debts of the past that there is not enough money for new road construction needs, not even enough to repair and maintain our present roads, and so in this case, new bonds must be issued to defray the cost of current needs.

This bond issue will simply transfer to future generations the necessity to levy taxes to pay for projects that should be paid for today, either out of current revenues, or by a bond issue which is accompanied by a tax to retire it which has been approved by a vote of the people as the Constitution requires.

The whole purpose of Kentucky Constitution Sections 49 and 50 is to prevent one administration from encumbering the tax revenues of a future administration. If we do not enjoin the sale of these bonds until we decide the question of their validity, upon the grounds advanced by the majority that there is no reasonable probability that the movant here can succeed, we have, in my opinion, lost control of the issue and have forfeited our right to later hold the bonds to be invalid. If we say today that there is no reasonable likelihood of success by the movant and let the bonds be sold, how can we be free at some later time to say that we were mistaken and then invalidate the bonds? The result would not only amount to a fraud by the Commonwealth, but a fraud aided and abetted by the Court.

In *Commonwealth v. O'Harrah*, Ky., 262 S.W.2d 385, 389 (1953), the highest Court in Kentucky looked the Constitution in the eye and said:

> "Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation.... In appraising the validity of the statute we must look through the form of the statute to the substance of what it does. The courts may not countenance an evasion or even an unintentional avoidance of our fundamental law."

Today we look at what appears to me to be a subterfuge and a proposed evasion of the fundamental purpose of our Constitution and wink at it.

This case is not controlled by *Turnpike Authority of Kentucky v. Wall*, Ky., 336 S.W.2d 551 (1960), or *Blythe v. Transportation Cabinet of the Commonwealth*, Ky., 660 S.W.2d 668 (1983), because those cases dealt only with the facial constitutionality of the statute and did not deal with the constitutionality of the language of the statute in its application to the fact that each future General Assembly may have no choice except to appropriate the money to retire the bonds.

In *Blythe, supra,* we said the statute was not unconstitutional on its face, but we expressly stated that we did not rule upon the validity of the bonds in issue, but left open the door for a future challenge that the bonds did, in fact, encumber the tax revenues in future bienniums and would therefore, in fact, constitute a debt of the Commonwealth in violation of the Constitution.

Because I feel that there is such a likelihood that it can be established by evidence that future legislatures will have no freedom to repudiate these bonds, and must therefore appropriate the money to repay them, I think there is a very real possibility that this Court may construe them to constitute a debt of the Commonwealth which violates the Constitution and renders them invalid.

Because of the specter of the disaster which would befall the Commonwealth if this possibility should materialize, I think we should not permit the sale of the bonds until the question of their validity is decided.

GANT, J., joins in this dissent.