Noel D. WILSON, a resident taxpayer bringing this complaint individually and on behalf of all Kentucky taxpayers resident in Kentucky, Appellant,

v.

KENTUCKY TRANSPORTATION CABINET and Kentucky Turnpike Authority, Appellees,

and

Landrum & Shouse, Special Amicus Curiae, appointed by Supreme Court pursuant to CR 14.03, Special Amicus Curiae.

No. 93–SC–360–TG.

Supreme Court of Kentucky.

Sept. 29, 1994.

Julius Rather, Lexington, for appellant.

Charles S. Cassis, C. Edward Glasscock, Stephen R. Schmidt, Brown, Todd & Heyburn, Louisville, James Park, Jr., Lexington, for appellee.

Cecil F. Dunn, Lexington, John H. Burrus, Landrum, Shouse & Patterson, Lexington, special amicus curiae Landrum & Shouse.

## WINTERSHEIMER, Justice.

This appeal is from a judgment of the circuit court which dismissed a declaratory judgment action which had sought a determination as to the constitutional validity of Economic Development Road Revenue bonds authorized pursuant to House Bills 799 and 929 enacted by the 1990 Kentucky General Assembly.

The specific question is whether the bonds are legal debt obligations of the Commonwealth within the meaning of Sections 49 and 50 of the Constitution. We believe the bonds do not represent a debt of the Commonwealth because neither the full faith and credit, nor the taxing authority of the Commonwealth is pledged to the payment of the principal or interest of the bonds. Neither the Commonwealth, nor the Authority is obligated to pay this bond issue, or the interest thereon, except from the revenues the Authority derives from the rental payments under the serial lease or from other revenues of the system. The funds to pay the bondholders arise from a biennial appropriation which is subject to the determination of the General Assembly in each biennium. The General Assembly has the absolute option of either making the appropriation for the serial lease payments or declining to do so. The risk of loss is squarely on the bondholders.

No one is misled. The bond purchaser has the opportunity to review the prospectus which is labeled "Plaintiff's Exhibit 2" in the circuit court, which proclaims in bold, black print, which is the largest on the page, that the bond issue is "Not an obligation of the Government and that the full faith and credit of the Commonwealth is not pledged for repayment." The specimen copy of the bond certificate itself, which was labeled "Plaintiff's Exhibit 1" in the circuit court announces in bold capital letters which are the largest on the page that the Economic Development Road Revenue Bond (Revitalization Projects) Series 1990 is not a pledge of the full faith and credit of the Commonwealth and is not a debt of the Commonwealth. The evidence is uncontroverted that neither the full faith and credit of the Commonwealth, nor the taxing authority of the Commonwealth is pledged to the repayment of any part of the bond issue.

The facts were stipulated by the parties in the circuit court. Under the statutory system, no direct revenue will be generated from the use of the roads enumerated in HB 929, once the expenditure and improvements contemplated by KRS Chapter 175 and House Bills 799 and 929 have been made other than as set forth in KRS 175.470(8). The road bonds issued are to be used for road construction, reconstruction and relocation projects and are secured by income and revenue derived from the Turnpike Authority's lease of road projects to the Transportation Cabinet. The Authority, acting pursuant to statute, leased to the Cabinet, the improvement, construction and reconstruction to be paid by the bonds. The total indenture exceeds $500 million dollars. The issuance of these bonds was not approved by the voters of the Commonwealth. The serial lease payment from the Cabinet is the only source of funds through which the bonds will

be retired. The Turnpike Authority closed the sale of $307,820,000 of bonds on October 18, 1990. This case involves only the unsold part of the authorized bond issue. The term of the lease is for two years except for the first term which expired June 30, 1992. The leases are to be renewed automatically each biennium unless written notification of termination is received prior to the end of the current biennium. The bonds oblige the Authority to make principal and interest payments to the bondholders.

Wilson argues that the bonds are sold to fund improvements on specific nonrevenue-producing already-existing state highways. He claims that they are debts within Sections 49 and 50 of the Kentucky Constitution and are, therefore, prohibited because there was no vote of the people. He contends that the Commonwealth's indebtedness will increase so that the Commonwealth's credit will be impaired and the taxpayers of generations to come will be obligated to pay off this indebtedness. At the trial level, the special amicus brief favored dismissal of the suit because the Supreme Court had refused to issue a temporary injunction which would have prohibited the sale of the bonds in 1990. The special amicus indicated that the decision had in effect decided the case. The circuit court determined that the decision of the Supreme Court provided an inescapable conclusion that the bond issue complained of passed constitutional muster and must be upheld.

On appeal, the special amicus argues that the bond legislation authorizing the sale of bonds to fund improvements on nonrevenue-producing already-existing state roads amounts to creation of debts of the Commonwealth which violates Kentucky Constitution Sections 49 and 50. The special amicus maintains that the mechanism provided by the statute is a sham and in spite of the statements that the term of the lease is not beyond the biennium, the reality is that the lease is renewable and the General Assembly will continue to allow it to be renewed, that the roads themselves produce no revenue to retire the bonds and that future years and generations are saddled with accumulated debt in violation of the spirit of the Kentucky Constitution. He contends that the previous cases decided by this Court are distinguishable because none of them resolve the specific issue of the creation of a constitutionally prohibited debt by the use of the financing system and that there is a practical certainty that future legislatures have no choice but to appropriate the money to retire the bonds. We find these arguments to be without merit.

■ The question of whether the bond legislation authorizing the sale of revenue bonds to fund improvements which are allegedly nonrevenue producing creates a legal debt of the Commonwealth within the prohibition of Kentucky Constitution §§ 49 and 50 was decided in *Blythe v. Transportation Cabinet*, Ky., 660 S.W.2d 668 (1983), as well as *Turnpike Authority of Kentucky v. Wall*, Ky., 336 S.W.2d 551 (1960). The attempt to distinguish these cases on the basis that they did not involve "nonrevenue producing" and already-existing state roads is unconvincing. The revenue producing character that is presented here and in the previous cases is the revenue produced by the payments from the biennial appropriations of the General Assembly and not the revenues which the tolls on the roads might produce. There were no tolls involved in *Blythe, supra,* and in *Wall, supra,* the tolls were never represented to be sufficient to pay the lease payments.

The contentions that debt was created because the project did not produce a special revenue fund and was for highways already owned, was expressly rejected by this Court in *Blythe.*

Similar arguments were raised in *Hayes v. State Property and Buildings Comm.*, Ky., 731 S.W.2d 797 (1987), where it was argued that as a practical matter, a future General Assembly would be unable to refuse to appropriate funds for the retirement of revenue bonds. *Hayes, supra,* correctly recognized that the relevant revenues were the lease payments and that this risk of default was assumed by the bondholders.

■ The argument that the General Assembly must renew the renewable leases and that this makes the revenue bonds into a general obligation bond within the meaning of the constitution is unpersuasive. It has

long been held in Kentucky that serial leases automatically renewable, unless cancelled, do not create a long-term obligation and therefore are not legal debts within the meaning of the constitution. *Davis v. Board of Education of City of Newport*, 260 Ky. 294, 83 S.W.2d 34 (1935), held that a serial lease arrangement did not create long-term indebtedness of the Board of Education within a similar constitutional limitation because the Board had reserved the option to continue the lease but was under no obligation to do so. That case involved serial lease provisions which automatically renewed for one-year periods up to a total of 30 years. *Hayes, supra*, stated in part that the incurrence of an obligation under a lease or financing agreement which extends only through a single year and which depends solely on the decision of future legislatures did not violate Sections 49 and 50 of the Kentucky Constitution.

The argument that the practical consequences produce some kind of constitutional general obligation is without merit. We recognize that constitutional provisions prohibit the creation of more than $500,000 in legal debt without the approval by a referendum or the passage of a tax to amortize the debts. The bonds in this case create no legally enforceable debt and consequently do not fall within those provisions. The risk of renewal and ultimate payment falls to the holders of the bonds who can only hope that future legislators will appropriate biennial lease payments. There is no enforceable legal obligation and no debt within the meaning of the Constitution because the General Assembly has no obligation to appropriate the lease payments; general revenues are not pledged to pay outstanding sums and the Commonwealth has no legal obligation to levy taxes to pay the rentals for the nonrenewable terms of the lease. It is the bondholders who gamble that the lease will be renewed. The bonds themselves do not create a constitutional legal debt obligation. The state, just as any other party to a contract, is obliged to pay only legal obligations. Practical, moral or righteous claims do not pass the test of contract or constitutional law.

Accordingly, because there is no legal obligation, there is no legal responsibility that any future legislature will either appropriate money or levy taxes sufficient to pay the bonds. Consequently, there is no legal obligation or debt which the courts can enforce against future generations and there is no constitutional debt pledging the full faith and credit of the Commonwealth.

The two-year financing leases for economic development projects are always subject to the actions of future legislatures in appropriating funds for renewal of any agreement envisioned by the bonds. The distinction between debt as a legal obligation and any other type of financing is a real distinction. Bondholders cannot resort to the court to require the General Assembly to appropriate funds to pay bonds or to levy taxes in the absence of a legal obligation. The lack of legal obligation protects both the present and future generations of the Commonwealth from enforcement or execution. Revenue bonds do not create the evil which the constitutional provision was designed to prevent. Certain generations certainly have the opportunity to utilize those resources which they deem necessary and appropriate.

*James, Auditor v. State University*, 131 Ky. 156, 114 S.W. 767 (1908), held that an act creating state universities and contemplating future appropriations for them did not violate the constitutional debt limitation provisions because the legislature had the option, although an impractical one, of not continuing to fund the universities and that the biennial funding of the ordinary expenses of government was not within the constitutional limitations. The possibility of such appropriations does not create an indebtedness in violation of the Constitution because they may be discontinued, reduced or changed at the pleasure of the General Assembly. *State Budget Comm. v. Lebus*, 244 Ky. 700, 51 S.W.2d 965 (1932), held that the word "debt" as used in Sections 49 and 50 means an obligation entered into in strict accordance with the provisions of the sections binding the Commonwealth to pay it by levy and collection of general taxes. A contingent liability is not within the meaning of the Constitution fixing a debt limit. *Preston v.*

*Clements,* 313 Ky. 479, 232 S.W.2d 85 (1950) provided in part that a debt in the constitutional sense arises out of a contract wherein the creditor is unconditionally entitled to receive and the debtor is obligated to pay. It is obvious that bondholders may look only to such funds as may be derived under the proposal and there is created no tax burden or obligation of the state to appropriate or pay the indebtedness or to be looked to as security for the same. The legislature is not legally bound to make appropriations to continue the payment of rentals even though such appropriations can be made within the constitutional limits of annual indebtedness. *See also Hayes, supra,* at 802 and 803.

The system of using revenue bonds and serial leases does not evade or circumvent the constitutional limitation. It is an exercise in authority by the General Assembly which is not prohibited by law. It fully satisfies the concerns of constitutional provisions because it does not create any legal obligation beyond the current biennium and leaves future appropriations to the decisions of future legislatures. The constitutional provisions were intended to restrict the ability of future legislatures to legally bind the people of the Commonwealth, both present and future, and not to deprive the General Assembly of appropriate means to finance projects it deems necessary.

There are a variety of other states in the United States which support this interpretation of similar constitutional provisions. *Dieck v. Unified School District of Antigo,* 165 Wis.2d 458, 477 N.W.2d 613 (1991), rejects similar arguments as advanced by the appellant and the special amicus in a municipal revenue bond case in Wisconsin. *See also, Dept. of Ecology v. State Finance Committee,* 116 Wash.2d 246, 804 P.2d 1241 (1991); *State ex rel. Kane v. Goldschmidt,* 308 Ore. 573, 783 P.2d 988 (1990), in which the Oregon Supreme Court approved a serial lease revenue bond plan as not an obligation of the state treasury; *Schulz v. State of New York,* 193 A.D.2d 171, 606 N.Y.S.2d 916 (N.Y.App.1993).

The bondholders in this case take the risk that future legislatures will not appropriate the annual lease payments. The legislature has no legal obligation to make such an appropriation and the General Revenues of Kentucky are not pledged in any way to pay the outstanding sums. There is no enforceable legal obligation and no debt created within the meaning of the Kentucky Constitution.

In addition there is no requirement to continue to levy and collect the collateral gasoline tax and no pledge of motor fuel taxes. *See* KRS 175.470(8) and KRS 175.790. There is no commitment by the Commonwealth beyond the biennium. The General Assembly has declared that the bonds are not debts. KRS 175.510. The bonds do not provide for any security interest in the roadways of Kentucky. There is no pledge of the roads as security, either in the projects themselves, or in any guaranteed revenue.

The bonds previously issued do not give bondholders any right of possession of the highways or the projects upon any default in payment.

The leasing method provided by KRS 175.750 through 175.810 is constitutional. The bond mechanism used by the legislature in this case is the same procedure specifically upheld by this Court in *Hayes, Blythe* and *Wall.* In examining the record of this case and the decisions in the previous cases, there is a striking similarity in argument by those who protest. The fact is that every material issue in this complaint and in the special amicus brief has been previously decided against the complainants by this Court. There is a facial appeal to the rhetoric used by Wilson and the Special Amicus but it is totally lacking in substance. The crucial element in this case is that there is no debt created because neither the credit, nor the taxing power of the state is pledged. There is no unconditional obligation to pay.

 Although in some matters there may be good reason to criticize decisions made by the legislative branch of government, it is fashionable to bemoan the explosion of debt in our society. Certainly the prospect of additional obligation requires serious and careful study by not only the legislature but by the courts to determine its constitutional propriety. However where the

legislature has acted within its constitutional authority, its decision must stand regardless of those who may disagree. The wisdom of the legislature is not in question. Our only concern is its constitutional authority. As has been mentioned earlier, there is a special deference to the legislature in regard to matters of fiscal policy and taxation. *Dalton v. State Properties & Building Comn.*, Ky., 304 S.W.2d 342 (1957) and *Commonwealth v. Smith*, 875 S.W.2d 873 (1994). The remedy for the concerns expressed by Wilson well may be with the citizens and voters changing the composition of the General Assembly, but it does not fall within the authority of the court to question the wisdom of the decisions of the legislature so long as they are not arbitrary. The public policy of the Commonwealth is determined by the General Assembly and not by the courts. *Peak v. Akins*, 237 Ky. 711, 36 S.W.2d 351 (1931).

It is the holding of this Court that the Economic Development Road Revenue Bonds (Revitalization Projects) Series 1990, as authorized by KRS 175.750 through 175.810, which provide for the construction and reconstruction of roads through a lease arrangement between the Turnpike Authority of Kentucky and the Kentucky Transportation Cabinet are not unconstitutional. The issuance of such bonds paid for by lease rental payments, do not authorize either the imposition of tolls or the pledge of motor fuel taxes or gasoline taxes and such bonds are not debts of the Commonwealth as prohibited by Sections 49 and 50 of the Kentucky Constitution. The General Assembly does not have any obligation to appropriate funds for the payment of the annual lease and the general revenues of the Commonwealth are not pledged to pay any outstanding sums.

The decision of the circuit court is affirmed.

STEPHENS, C.J., and LEIBSON and SPAIN, JJ., concur.

REYNOLDS, J., concurs in result only.

STUMBO, J., dissents by separate opinion in which LAMBERT, J., joins.

STUMBO, Justice, dissenting.

When is a debt not a debt? When the Commonwealth is a debtor! This feat of linguistic alchemy is the result of the legal fiction known as the revenue bond. In 1957, this Court defined revenue bonds as follows:

> The term 'revenue bonds' is a descriptive qualification indicating that the instruments are payable solely from a revenue producing public project.

*Dalton v. State Property and Buildings Commission*, Ky., 304 S.W.2d 342, 352 (1957).

In 1960, we moved incrementally away from the "payable solely" requirement by approving a scheme whereby the gasoline tax paid on gasoline used by vehicles traveling the turnpike built by the revenue bond proceeds could be treated as revenue of the project. *Turnpike Authority of Kentucky v. Wall*, Ky., 336 S.W.2d 551 (1960). In that same opinion however, we held that a provision requiring the Department of Highways to make up any shortfall in the bond payments from unencumbered Department funds ran afoul of Kentucky Constitution §§ 49 and 50.

As time has passed, we have allowed connection between the revenue produced and the project to become more and more tenuous. In *Blythe v. Transportation Cabinet*, Ky., 660 S.W.2d 668 (1983), we approved legislation providing for revenue bonds to cover economic development road projects secured solely by income and revenue derived from leasing the road to the Department of Transportation. No tolls were involved, but the issuing agency did have possession of the roads and, thus, something to lease for which rent could be expected.

Next, in *Hayes v. State Property and Bldgs. Com'n.*, Ky., 731 S.W.2d 797 (1987), we sanctioned the revenue bonds issued to develop the Toyota plant. Those bonds are paid off through revenue accrued from incremental taxes and appropriated to the Commerce Cabinet for that purpose. Thus, a privately-owned business was, in part, financed by the Commonwealth under the guise of renting something the Commonwealth did not own and has little control over to the Commerce Cabinet, said rental pay-

ments being made by increases·in taxes paid to the state that may, or may not, be in any way related to economic growth arising from the facility's operation.

In the present case, that which is leased is the improvement, construction, and reconstruction of certain nonrevenue-producing, already-existing roads. At least that upon which this huge investment is being made does belong to the state, which is marginally better than the fact situation in *Wall.* But, facts are facts: no revenue is produced by these roads, thus these cannot be revenue bonds as the term has classically been defined.

Financing schemes such as this have been described as "moral obligation bonds" in New York. *See, e.g., Schulz v. State,* 193 A.D.2d 171, 606 N.Y.S.2d 916 (A.D. 3 Dept. 1993), *aff'd,* 84 N.Y.2d 231, 616 N.Y.S.2d 343, 639 N.E.2d 1140 (1994). Therein, as here, the court noted that "under the terms of the leases or agreements the State has no legal obligation to appropriate money to make payments, it has no legal liability to the bondholders and effectively divests itself of all but a moral obligation to appropriate the moneys necessary to fund and secure the bonds." *Id.,* 193 A.D.2d, 606 N.Y.S.2d at 917, 918 n. 1. That moral obligation is enforced by the very real and tangible fact that should the legislature fail to appropriate the money necessary to cover the bond obligation, the Commonwealth's credit rating would plummet and future bond issues would be difficult, if not impossible.

Through smoke and mirrors we have allowed debt to be labeled something else for too long. The economic reality is that these bonds are debts of the Commonwealth. They are therefore in violation of §§ 49 and 50 of the Kentucky Constitution.

LAMBERT, J., joins this dissent.